# Illinois Official Reports

## Appellate Court

---

*Wheeling Park District v. Arnold*, **2014 IL App (1st) 123185**

---

| | |
|---|---|
| Appellate Court Caption | WHEELING PARK DISTRICT, Plaintiff-Appellee, v. MARGIE ARNOLD, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3185 |
| Filed | February 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by plaintiff park district to enforce the severance agreement terminating defendant's employment by the district, the trial court properly upheld the enforceability of the agreement over defendant's contentions that the agreement was not approved by the district's board as required by section 4-6 of the Park District Code, and that she revoked the agreement, since the agreement was an agreement settling and compromising an existing dispute, no debt, obligation, claim or liability was created, and as such, no board approval was required pursuant to section 4-6, and, furthermore, there was no revocation where the record showed defendant signed and delivered the agreement and the park district fully performed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-14792; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael Lee Tinaglia, of Michael Lee Tinaglia, Ltd., of Park Ridge, for appellant. |
|---|---|
| | Joseph M. Gagliardo, Gregory R. James, Jr., and Devlin J. Schoop, all of Laner Muchin, Ltd., of Chicago, and Edward F. Dutton, of Park District Risk Management Agency, of Lisle, for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this case we address whether an executive director of a park district has the authority to enter into a binding severance agreement terminating an employee without prior written approval of the board pursuant to section 4-6 of the Illinois Park District Code (70 ILCS 1205/4-6 (West 2008)). We hold the resignation agreement entered into by the executive director of the district was not subject to section 4-6 because, as a settlement agreement, it did not create any debt, obligation, claim or liability but, rather, settled and compromised an existing dispute. Thus, approval of the board was not required. The agreement was also a binding and valid contract and there was no effective revocation, as the terminated employee signed and delivered the contract to the board and the board fully performed.

¶ 2                                   BACKGROUND

¶ 3    The Wheeling Park District (the District) is governed by the Wheeling Park District Board of Commissioners (the Board). The Board's executive director is Jan Buchs. Plaintiff Margie Arnold, the former director of enterprise services for the District, was discharged effective December 7, 2009. Although Buchs had decided to discharge plaintiff for reasons of documented poor performance, Buchs offered plaintiff the opportunity to voluntarily resign in lieu of a discharge. Buchs offered plaintiff a written severance agreement. The District was to pay plaintiff three months of severance payments in installments and other benefits (including COBRA payments) in exchange for a complete release of any claims against the District. The agreement also provided in paragraph 15 that if plaintiff breached the agreement, then the District would be entitled to a return of 90% of the money paid by the District for both her severance pay and insurance/COBRA benefits (upon demand), and plaintiff would be required to pay the District's costs and attorney fees as a result of her breach. Plaintiff signed the resignation letter on December 7, 2009, but declined to sign the severance agreement that day,

requesting additional time to consult an attorney. Buchs gave plaintiff an additional three days, until December 10, 2009, 3 p.m., to sign the agreement.

¶ 4    On December 11, 2009, Arnold told Buchs via e-mail that she had consulted with an attorney and she then attempted to negotiate a modification of the agreement's severance compensation to receive one month's severance pay for every year she worked, a lump sum for seven months, instead of the three months' pay in installments offered by the District, to be compensated for eight to nine weeks of unused sick time, and to be credited with one year of service for her pension plan. Buchs responded that same day, stating that the terms of the agreement were "nonnegotiable."

¶ 5    On December 14, 2009, at 2:18 p.m., Arnold faxed a signed copy of the agreement to Buchs. Buchs maintains she signed the agreement that same day. Arnold disputes that Buchs signed the agreement that day, relying on the deposition testimony of Ron Salski, a former District employee, who testified that he had two conversations with Buchs that "could have been" in December 2009 or "could have been" in January 2010. Salski testified that in the first conversation, Buchs told him that she had not yet signed the agreement due to concerns that plaintiff may have breached the confidentiality provision of the agreement by talking about the agreement to other District employees. Salski testified that in the second conversation, Buchs confirmed that no other employees had knowledge of the agreement, and Salski recommended that Buchs sign the agreement and she replied, "[W]e'll see." In any event, it is undisputed that Arnold faxed a signed copy of the agreement to Buchs on December 14, 2009, at 2:18 p.m.

¶ 6    Without authorization from the District, the District's outside third-party administrator (not an officer) initially contested Arnold's unemployment benefits. When the District learned of this, it immediately withdrew the contest to plaintiff's benefits. Arnold was informed by the Illinois Department of Employment Security that the District withdrew the contest to her benefits. On January 8, 2010, the District made its first severance payment. That same day, after receipt of this first payment, Arnold sent a letter through counsel (different than counsel who reviewed the agreement), purporting to revoke the agreement. The District continued to make all installment payments and paid financial assistance for plaintiff's COBRA benefits, as per the agreement, which Arnold accepted. It is undisputed that the District made all payments to Arnold electronically directly to Arnold's bank account. On March 3, 2010, despite the agreement, Arnold filed a charge of discrimination against the District before the Cook County Commission on Human Rights, alleging that the District discriminated against her on the basis of her sexual orientation.

¶ 7    The District filed a complaint for declaratory judgment that the resignation agreement was a valid enforceable contract and filed a motion for summary judgment in its favor. The District stated in its answers to Arnold's interrogatories that "the executive director of the Wheeling Park District is vested with all responsibilities concerning the hiring, firing, and administration of employment related issues at the Wheeling Park District."

¶ 8    John Kolssak, a two-term commissioner with the Board, testified at his deposition that Buchs did not require prior approval from the board of commissioners to hire or fire employees because "as a board we empowered [Buchs with] the ability to run the park district day-to-day operations as she saw fit," and this authority included the ability to offer severance agreements and terminate employees. Kolssak testified that Buchs' authority included the ability to offer

severance agreements to terminated employees and he testified that Buchs had done so previously on several occasions during his tenure on the Districts' board of commissioners.

¶ 9 Arnold disputes the director's authority to terminate employees, arguing that the job description for the executive director position does not vest the executive director with the power to terminate park district employees. The Wheeling Park District Board policy manual provides that the Board of Commissioners is empowered to: "Approve contracts, leases, annexations, and agreements that will enhance to further the mission of the district." There is no provision in the Board policy manual that specifically gives the executive director either the power to enter into agreements on behalf of the District or to terminate or fire employees of the District. The Wheeling Park District personnel policy manual provides: "No representative of the District, other than the Board, has the authority to enter into any agreement with or make any representation to any management, supervisory, or regular personnel." Plaintiff offered no evidence of discrimination other than her own assertion.

¶ 10 The circuit court entered summary judgment in favor of the District, holding that the agreement was valid and barred any claims, but denied attorney fees. Arnold appealed. The District also cross-appealed the portion of the court's summary judgment order denying attorney fees but then voluntarily dismissed its cross-appeal for its attorney fees due to Arnold's bankruptcy. As such, we do not address attorney fees but limit our analysis to only the validity of the resignation agreement.

¶ 11                                              ANALYSIS

¶ 12 Arnold argues the circuit court erred in granting summary judgment to the District because the resignation agreement was not valid for two reasons: (1) section 4-6 of the Illinois Park District Code (Code) (70 ILCS 1205/4-6 (West 2008)) required express approval by the Board; (2) Arnold revoked her acceptance prior to Buchs' signature; and (3) the District breached the agreement by contesting Arnold's unemployment benefits.

¶ 13 Arnold first argues that the agreement is not valid under section 4-6 of the Code because it constituted a "creation of debt" that was never expressly authorized by the Board at a meeting. Article 4 of the Illinois Park District Code sets forth park district officers' powers and duties. Section 4-6 provides:

> "No member of the board of any park district, nor any person, whether in the employ of said board or otherwise, shall have power to create any debt, obligation, claim or liability, for or on account of said park district, or the monies or property of the same, except with the express authority of said board conferred at a meeting thereof and duly recorded in a record of its proceedings." 70 ILCS 1205/4-6 (West 2008).

¶ 14 Section 4-8 provides that for each park district "[t]he Board shall prescribe [board officers'] powers and duties not inconsistent with the provisions of this code." 70 ILCS 1205/4-8 (West 2008). Section 1.3 of the District's employee handbook states that "[e]mployment with the District is at-will; staff may choose to terminate employment at any

- 4 -

time, with or without notice. Similarly, the District may terminate employment at any time for any lawful reason, with or without notice."[1]

¶ 15    Section 4-6 of the Code requires the "express authority" of the District's Board only "to *create* any debt, obligation, claim or liability." (Emphasis added.) 70 ILCS 1205/4-6 (West 2008). A settlement agreement does not create a new debt, obligation, claim or liability; it is a compromise of an existing disputed claim. " 'A compromise is an agreement to terminate, by means of mutual concessions, a claim that is disputed in good faith or unliquidated.' " *People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 221 (2006) (quoting 15A Am. Jur. 2d *Compromise and Settlement* § 1 (1976)). " ' "It involves an agreement that a substituted performance is acceptable instead of what was previously claimed to be due; thus, each party yields something and agrees to eliminate both the hope of gaining as much as he previously claimed and the risk of losing as much as the other party preciously claimed." ' " *Wiley*, 218 Ill. 2d at 221 (quoting *Collection Professionals, Inc. v. Logan*, 296 Ill. App. 3d 959, 964-65 (1998), quoting 15A Am. Jur. 2d *Compromise and Settlement* § 1 (1976)). "In other words, a compromise is an agreement that a substitute performance will be accepted in place of what was previously claimed to be due each party." *Wiley*, 218 Ill. 2d at 221. See also *Logan*, 296 Ill. App. 3d at 964-65. As settlement agreements do not *create* debt, obligation, claims, or liability, section 4-6 thus does not encompass settlement agreements. The express approval by the Board at a meeting was not required.

¶ 16    The severance agreement settled and compromised the dispute between Arnold and the District. Each party agreed to substitute performance and gave consideration for the agreement. There was no creation of any new debt, obligation, claim or liability. Section 4-6 does not apply and the express authority of the Board was not required in order for Buchs to enter the severance agreement in this case.

¶ 17    For this same reason, Arnold's reliance on paragraph 6.2 of the District's administrative policy manual regarding "Creation of Debt" and on paragraph 6.13 of the District's administrative policy manual prohibiting any "purchase" by the executive director exceeding $19,999.99 also fails.

¶ 18    Arnold cites to *D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill. App. 3d 60 (1986), where the Second District Appellate Court held that a park district contract to provide for payment to a structural engineer for his services was void as in violation of section 4-6. The contract in that case was solely incurring a new debt for services and was not a severance or resignation settlement agreement with a release. *D.C. Consulting Engineers* is inapposite. The agreement in this case did not incur a new debt, claim or obligation, as in hiring a contractor to do work for the District. Rather, the agreement is a settlement agreement and release of any future claims. Other cases cited by Arnold are similarly inapposite because they all involved the creation of a new debt, claim or obligation, and not a settlement of an existing claim or dispute. See *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561 (2000) (addendum to police-employee collective bargaining agreement); *South Suburban Safeway Lines, Inc. v. Regional Transportation Authority*, 166 Ill. App. 3d

---

[1]The Park System Civil Service Act, with its hearing before termination protection for park district civil servants, does not apply to Wheeling because Wheeling's population is below 500,000. See 70 ILCS 1210/1, 12 (West 2008).

361 (1988) (agreement transferring operating rights); *Bank of Pawnee v. Joslin*, 166 Ill. App. 3d 927 (1988) (promissory note).

¶ 19   No other provision of the Code required the Board's approval either. Section 4-8 empowers the Board to grant authority to its officers not inconsistent with other provisions in the Code. 70 ILCS 1205/4-8 (West 2008). Kolssak testified that the Board granted Buchs the authority to terminate employees. Plaintiff offers no evidence that Buchs was not given this authority.

¶ 20   Arnold also argues that, if the Board's approval was not required, no valid contract was formed because she withdrew her acceptance before Buchs signed the agreement. Arnold's argument is contrary to well-established contract law. "If a document is signed by the party being charged, the other party's signature is not necessary if the document is delivered to that party and it indicates acceptance through performance." *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 756 (2008) (citing *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 891 (1995)). That is exactly what happened in this case. Arnold is the party being charged in this declaratory judgment action, as the District is seeking to enforce the agreement against Arnold. As the party being charged, Arnold is the party who signed and delivered the agreement and therefore is bound. An offer was made to Arnold, she accepted the offer by signing and delivering the agreement to Buchs by facsimile by the date and time specified, and the District indicated acceptance through performance. Though plaintiff initially rejected the offer by making a counteroffer in attempting to renegotiate, she signed the unmodified agreement as specified under the extension terms and bound herself. Arnold's argument that the offer meant that "Buchs reserved the right to finally create a contract when she affixed her signature to the Resignation Agreement and General Release" is without any support, either legally or factually.

¶ 21   Salski's testimony regarding his conversations with Buchs does not establish that Buchs failed to sign the agreement before plaintiff's revocation; at most, he testified that the conversations "could have been" in January 2010, but with no specific date in January. Salski did not testify that Buchs failed to sign the agreement by January 8, 2010, the date of plaintiff's revocation. In any event, Buchs' signature is not required, since plaintiff signed and delivered the agreement to Buchs, and the District performed, which is sufficient as a matter of law. Salski's testimony does not create a genuine issue of material fact regarding the District's entitlement to summary judgment on the contract.

¶ 22   Arnold attempts to reverse the role of offeror and offeree, claiming that Arnold made the offer and that the District was the party who had to accept by delivery. Based on this faulty premise, Arnold argues that "prior to delivery of acceptance by the District, Arnold withdrew her offer to contract." But the facts clearly establish that the District, through Buchs, made the offer to Arnold, and that Arnold's acceptance and delivery of that acceptance formed the contract.

¶ 23   Finally, the District did not breach the agreement by first contesting and then withdrawing their dispute of Arnold's unemployment benefits. The contest was unauthorized and the District immediately withdrew it. The District performed under the contract and paid plaintiff her benefits as well as her severance pay. Arnold admits that all payments were made by the District directly to her bank account. Under well-established contract law, the agreement is

valid and binding.

¶ 24                                  CONCLUSION

¶ 25    The resignation agreement entered into by the executive director of the District was not subject to section 4-6 of the Illinois Park District Code because, as a settlement agreement, it did not create any debt, obligation, claim or liability but, rather, settled and compromised an existing dispute. Thus, approval of the Board was not required. The agreement was also a binding and valid contract and there was no effective revocation, as Arnold signed and delivered the contract to the Board and the Board fully performed. Finally, the District did not breach the agreement.

¶ 26    Affirmed.