2015 IL App (2d) 140645
No. 2-14-0645
Opinion filed April 8, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JANE MEADE, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 09-L-410 |
| | ) | |
| THE CITY OF ROCKFORD, | ) | Honorable |
| | ) | J. Edward Prochaska, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justice Hudson concurred in the judgment and opinion.
Justice McLaren dissented, with opinion.

**OPINION**

¶ 1    On the eve of trial, the plaintiff, Jane Meade, and the defendant, the City of Rockford (City), reached a settlement agreement and the trial date was stricken. The plaintiff subsequently signed a written settlement agreement drafted by the City. However, when the settlement was presented to the city council (City Council or Council) a few weeks later, that body (including some of the Council members who had been present at the settlement conference and had approved the settlement offer at that time) voted to reject the settlement agreement. The plaintiff moved to enforce the settlement agreement, and the circuit court of Winnebago County denied the motion but certified certain questions pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). We accepted the appeal to resolve the certified questions, and now answer all of them in the negative.

¶ 2                                    BACKGROUND

¶ 3     The plaintiff alleges that she was injured on May 10, 2009, when she was standing on the parkway near a street in her Rockford neighborhood and the ground gave way, causing her to fall into a sinkhole.  She filed suit against the City in 2010.  At the time of the events relevant herein, trial was set to begin on January 27, 2014.

¶ 4     On January 14, 2014, the parties appeared in court for a pretrial settlement conference. Local Rule 11.03 of the Winnebago County circuit court requires parties appearing for such a conference to have "settlement authority," defined as "the ability to meaningfully negotiate toward a settlement agreement on behalf of a party and, if successful, to bind that party to an enforceable settlement agreement."  17th Judicial Cir. Ct. R. 11.03 (adopted Feb. 13, 2013).  At that conference, the City offered $200,000; the plaintiff rejected the offer.

¶ 5     On January 24, 2014 (the last business day before the trial was set to start), the parties again met for a pretrial settlement conference.  The parties' attorneys were physically present for the conference.  The plaintiff and all five members of the Rockford City Council's Code and Regulation Committee (Committee) were present by telephone.  The City offered $400,000, which the plaintiff rejected.  The City's attorney conferred by phone with all five Committee members.  He then offered $600,000.  In interrogatory answers, the City conceded that, on January 24, all five of the Committee members approved this offer.  The offer was accepted by the plaintiff.  The trial court docketed the case as settled and struck the trial date.

¶ 6     On February 6, 2014, the City's attorney sent the plaintiff a draft settlement agreement and release.  The plaintiff signed it in the presence of a notary on February 10, 2014, and returned it to the City.  The settlement agreement did not state that it was subject to approval by the City Council.

¶ 7    On February 24, 2014, the settlement was presented to the City Council for approval. At that time, two of the Committee members who had previously approved the settlement on January 24 changed their votes and voted to reject it. Another Committee member was absent and did not cast a proxy vote. The remaining two Committee members voted consistently with their previous positions to approve the settlement. The vote of the City Council was 7 to 5 against approving the settlement. It is undisputed that, if all the Committee members had been present at the City Council meeting and had voted consistently with their earlier positions, the settlement would have been approved.

¶ 8    The facts set out above are undisputed and thus are properly subject to our consideration. Equally important to this case is what is *not* before us, however. This is an interlocutory appeal and the record is relatively sparse. Both parties make assertions in their briefs for which there is no support in the record. For instance, the plaintiff's attorney asserts that the Committee settles all the City's cases (at least all the ones with which the attorney has been involved), and implies that the Committee is authorized to act on the City's behalf. However, the record does not contain any explicit authorization or delegation by the City Council allowing the Committee to act on the City's behalf to settle cases. Nor does the record contain any evidence (such as an affidavit or record regarding other cases previously settled by the Committee) showing that the City had a custom or practice of allowing the Committee to settle all cases against the City. For its part, the City asserts that, at the settlement conference, it told everyone that it would have to have the settlement agreement approved by the full City Council. However, there is no record of any such statement, nor any bystander's report reflecting this, and the plaintiff disputes this assertion. (The only report of proceedings in the record is of the oral argument on the motion to enforce the settlement.) As none of these assertions is supported by the record, we do not consider them.

¶ 9    On February 26, the plaintiff filed a motion to enforce the settlement. In May 2014, after the motion was fully briefed, the trial court heard oral argument and denied the motion.

¶ 10    On June 13, 2014, the trial court issued an order certifying three questions. We granted leave to appeal to resolve these questions, which are set out below. First, however, we find it useful to set out certain statutes and ordinances referred to in the certified questions. Section 3.1-40-40 of the Illinois Municipal Code provides:

"Vote required. The passage of all ordinances for whatever purpose, and of any resolution or motion (i) to create any liability against a city or (ii) for the expenditure or appropriation of its money shall require the concurrence of a majority of all members then holding office on the city council, *** unless otherwise expressly provided by this Code or any    other Act governing the passage of any ordinance, resolution, or motion." 65 ILCS 5/3.1-40-40 (West 2012).

Section 2-277 of the Rockford Code of Ordinances (as amended) provides:

"Settlement of suits and claims.

The legal director shall have authority to make settlement for less than [$12,500] of lawsuits and controverted claims against the city. For the settlement of all other lawsuits, the legal director shall obtain the consent of the city council."

¶ 11    The trial court certified the following questions:

"1.    Does the Illinois Municipal Code, 65 ILCS 5/3.1-40-40, exclude settlement of ongoing litigations [*sic*] from its requirement for 'approval of all members holding office on the city council [for the] passage of any resolution to create liability against a city for the expenditure of its money,' [*sic*] pursuant to the reasoning applied in *Wheeling Park District v. Arnold*, 2014 IL App (1st) 123185?

2.a.    Is the requirement, under City of Rockford Ordinance § 2-277, for 'consent of the city council' for settlement of lawsuits for more than $12,500, satisfied when all members of the City Council Code and Regulation Committee extend their approval to a City Attorney to make a settlement offer in the presence of a Circuit Court Judge during a formal pretrial settlement conference at which said Committee members are present by telephone?

2.b.    If questions 1 and 2.a. are answered in the negative and a vote by all members of a City Council is required for a municipality's settlement of an ongoing lawsuit for more than $12,500, are the City Council members who gave approval to a City Attorney during a formal pretrial settlement conference required to vote consistently with such previous authority when the formal vote is taken at a full Council meeting?

3.    Is a settlement agreement, reached between a plaintiff and a municipal defendant during a pretrial settlement conference before the court and memorialized in a Release and Settlement Agreement drafted by a City Attorney and signed by the plaintiff before a notary, enforceable against municipality notwithstanding the City Council's subsequent vote to not approve said settlement?"

¶ 12                                ANALYSIS

¶ 13    In considering the certified questions, we found some overlap between the issues they raise. Nevertheless, for ease of reference upon remand, we address each certified question as written, in the order set forth by the trial court.

¶ 14    "Question 1: Does the Illinois Municipal Code, 65 ILCS 5/3.1-40-40, exclude settlement of ongoing litigations [*sic*] from its requirement for 'approval of all members holding office on the city council [for the] passage of any resolution to create liability against a city for the expenditure of its money,' [*sic*] pursuant to

the reasoning applied in Wheeling Park District v. Arnold, 2014 IL App (1st) 123185?"

¶ 15    Answer: No.

¶ 16    The threshold question raised in this certified question is one of statutory interpretation: should section 3.1-40-40 of the Municipal Code be read to include settlement agreements within its scope?  In construing a statute, we begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting it.  *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001).  The statutory language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the statute without resort to further aids of statutory construction.  *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999).  We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent.  *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002).

¶ 17    The plain language of section 3.1-40-40 requires the approval of a majority of a city's council for the passage of any ordinance, resolution or motion "for whatever purpose" when the proposed action would (1) "create any liability" against the city or (2) require "the expenditure or appropriation of its money."  65 ILCS 5/3.1-40-40 (West 2012).  The plaintiff argues that, under the reasoning of a recent case from another appellate district, *Arnold*, 2014 IL App (1st) 123185, the settlement of a pending lawsuit does not constitute the "creation of a liability" against the City, and therefore this settlement agreement was not subject to the Municipal Code's requirement of a majority vote.

¶ 18    In *Arnold*, a Wheeling Park District (District) employee, Margie Arnold, was to be terminated.  *Id*. ¶ 3.  The District's executive director, Jan Buchs, offered Arnold a written severance agreement under which Arnold would resign and receive three months of severance

pay, along with other benefits, including insurance contributions, in return for a complete release of any claims against the District. *Id*. Arnold ultimately signed the agreement and faxed it to Buchs. *Id*. ¶ 5. Thereafter, the District withdrew its opposition to Arnold receiving unemployment benefits and made the severance and insurance payments, all of which were accepted by Arnold. About the same time that Arnold was receiving the last of her severance payments, she filed a charge of discrimination with the Cook County Human Rights Commission. *Id*. ¶ 6.

¶ 19     The District filed an action in the circuit court, seeking a declaratory judgment that the severance agreement was a valid enforceable contract. The District's interrogatory answers stated that Buchs was " 'vested with all responsibilities concerning the hiring, firing, and administration of employment related issues' " for the District. *Id*. ¶ 7. A member of the District's governing body, the board of commissioners, testified in a deposition that the board had authorized Buchs to manage the day-to-day operations of the District and that this authority included the power to offer severance agreements to employees being terminated. *Id*. ¶ 8. However, the District's personnel policy manual stated that " '[n]o representative of the District, other than the Board, has the authority to enter into any agreement with or make any representation to any management, supervisory, or regular personnel.' " *Id*. ¶ 9. Further, section 4-6 of the Illinois Park District Code provided:

> "No member of the board of any park district, nor any person, whether in the employ of said board or otherwise, shall have power to create any debt, obligation, claim or liability, for or on account of said park district, or the monies or property of same, except with the express authority of said board conferred at a meeting thereof and duly recorded in a record of its proceedings." 70 ILCS 1205/4-6 (West 2008).

The circuit court entered summary judgment in favor of the District, and Arnold appealed.

¶ 20    The appellate court began by holding that section 4-6 of the Park District Code did not apply to the case before it, because "[a] settlement agreement does not create a new debt, obligation, claim or liability." *Arnold*, 2014 IL App (1st) 123185, ¶ 15. Rather, the court said, a settlement agreement is merely "a compromise of an existing disputed claim." *Id.* Accordingly, the District could informally delegate to Buchs its authority to enter into settlement agreements, and it did not have to do so formally "at a meeting" in a manner "duly recorded," as would normally be required under section 4-6 of the Park District Code. *Id.* For the same reason, the court found inapplicable Illinois case law holding that a contract entered into by an employee without the approval of a park district board is *ultra vires* (void as being beyond the park district's power). *Id.* ¶ 18; see, *e.g.*, *D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill. App. 3d 60, 97 (1986). Finally, the court noted that the District had fully performed under the contract by paying Arnold the agreed-upon benefits. *Arnold*, 2014 IL App (1st) 123185, ¶ 21. This indicated that the District had subsequently ratified the contract.

¶ 21    The plaintiff argues that, just as the settlement agreement in *Arnold* did not create any new debt, obligation, or liability, and thus did not come within the scope of section 4-6 of the Park District Code, the settlement agreement here did not "create a liability" within the meaning of section 3.1-40-40 of the Municipal Code.

¶ 22    There are two problems with the plaintiff's reliance on *Arnold*. First, the relevant facts in *Arnold* are quite different. There, the evidence showed that the District had informally delegated the power to contract to its employee; it accepted the contract that the employee made; and it performed its obligations under that contract. Here, by contrast, no delegation of the power to enter into this settlement agreement appears in the record; the City never subsequently accepted or approved the settlement; and it did not perform under the agreement. Thus, *Arnold* is distinguishable on its facts.

¶ 23    Second, the relevant statutes are different, in ways that affect the outcome of the issue. Unlike the provision of the Park District Code at issue in *Arnold*, section 3.1-40-40 of the Municipal Code requires the approval of a majority of the governing body in *two* scenarios: when the matter at issue would "create any liability" against the city, and also when the matter at issue requires "the expenditure or appropriation of its money."  65 ILCS 5/3.140-40 (West 2012).  Even if we applied the reasoning of *Arnold* to find that the settlement of this pending lawsuit did not constitute the "creation of a liability" against the City, the settlement agreement unquestionably involved the expenditure of $600,000 of the City's money.  *Arnold* did not address any similar statutory requirement of formal approval for expenditures or appropriations. Accordingly, *Arnold* does not prevent the application of section 3.1-40-40 of the Municipal Code to the settlement agreement at issue here, and the answer to the first certified question is "no."

¶ 24    "Question 2.a.: Is the requirement, under City of Rockford Ordinance § 2-277,

for 'consent of the city council' for settlement of lawsuits for more than $12,500,

satisfied when all members of the City Council Code and Regulation Committee

extend their approval to a City Attorney to make a settlement offer in the

presence of a Circuit Court Judge during a formal pretrial settlement conference

at which said Committee members are present by telephone?"

¶ 25    Answer: No.

¶ 26    Like the first question, certified question 2.a. raises an issue of statutory interpretation, regarding the correct meaning of the phrase "consent of the city council" that appears in section 2-277 of the City's ordinances.  The same principles that apply to the construction of statutes also apply to the construction of municipal legislative enactments such as ordinances.  *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 48.

¶ 27    The plaintiff argues that, even if section 3.1-40-40 of the Municipal Code requires a majority vote of the City Council in order to bind the City to a settlement agreement, Rockford ordinance section 2-277 should be applied instead because it is more specific.  The ordinance uses a different phrase ("the consent of the City Council") which does not explicitly require a vote by the City Council itself.  Rockford Code of Ordinances § 2-277 (adopted Jan. 6, 1975).  The plaintiff argues that, as the members of the Committee were also members of the City Council, the Committee's assent to the settlement at the pretrial conference constituted the necessary "consent."  We find the plaintiff's arguments on this point strained.  However, we need not address the merits of these arguments because, regardless of the meaning of section 2-277, as a municipal ordinance it establishes only a limited exception to the operative state statute, section 3.1-40-40 of the Municipal Code, and that exception does not apply here.

¶ 28    In *Potson v. City of Chicago*, 304 Ill. 222 (1922), the Illinois Supreme Court stated the principle that, as a municipality's power to enact ordinances derives from the grant of such power by the General Assembly, a municipality may adopt only those ordinances that are necessary and proper to exercise the powers granted to it.  *Id*. at 225-26; see also 65 ILCS 5/1-2-1 (West 2012) ("The corporate authorities of each municipality may pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities ***.").  A corollary to this principle is that a municipality may not adopt an ordinance that conflicts with state law.

¶ 29    Viewed as a whole, section 3.1-40-40 establishes a framework for the approval of contracts involving municipal entities, including settlement agreements:  the agreement must receive a majority of votes of the members of the governing body.  Thus, ordinarily a city council is the only body with the power to enter into settlement agreements in lawsuits involving a city.  Through section 2-277 of its ordinances, the City Council has formally established a

limited delegation of its power to approve settlement agreements under certain defined circumstances: the City's legal director may enter into settlements below a designated amount (currently $12,500) without bringing those settlements before the City Council for approval. Neither party has contested the City's power to make this limited delegation, and thus we do not address the validity of section 2-277 here. However, it is clear that, where the limited delegation created by section 2-277 does not apply, the requirements of section 3.1-40-40 must be met. Here, section 2-277 does not apply, because the amount of the settlement was more than $12,500. Thus, the applicable law is section 3.1-40-40 of the Municipal Code. The answer to certified question 2.a is "no."

¶ 30    "Question 2.b.: If questions 1 and 2.a. are answered in the negative and a vote by all members of a City Council is required for a municipality's settlement of an ongoing lawsuit for more than $12,500, are the City Council members who gave approval to a City Attorney during a formal pretrial settlement conference required to vote consistently with such previous authority when the formal vote is taken at a full Council meeting?"

¶ 31    Answer: No.

¶ 32    The plaintiff argues that the statements by the Committee members, to the effect that they approved of the settlement reached at the pretrial conference, should be considered binding "judicial admissions" that the Committee members could not later repudiate when voting in the full City Council. Judicial admissions are "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). Judicial admissions are binding upon the party who made them, "dispensing with proof of a fact claimed to be true, and are used as a substitute for legal evidence at trial." *Dremco, Inc. v. Hartz Construction Co.*, 261 Ill. App. 3d 531, 535-36 (1994). In this respect,

they are different from ordinary evidentiary admissions, which may be contradicted or explained at trial. *Rennick*, 181 Ill. 2d at 406. Judicial admissions can include statements by parties or their attorneys made in open court, discovery answers, stipulations, and pleadings. *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 60.

¶ 33 The City argues that the plaintiff forfeited this argument, as she never made it in the trial court. While the plaintiff did not make this precise argument or use the phrase "judicial admission," she did argue that the Committee members "were required, based on the signed Release, to cast the same votes they gave to [the City's attorney, approving the settlement,] on January 24, 2014." In addition, the idea that the Committee members should be bound by their previous approval of the settlement surfaced in various aspects of the plaintiff's oral argument on the motion to enforce the settlement. Accordingly, while the argument might have been inartfully raised, we decline to find it forfeited.

¶ 34 Nevertheless, the assertion that the Committee members' voiced approval of the settlement offer constituted binding judicial admissions is mistaken. As our supreme court noted, judicial admissions are statements of fact that are deliberate, clear, and unequivocal. *Rennick*, 181 Ill. 2d at 406. The record here does not disclose any such statements of fact by the Committee members. At most, the record shows an admission by the City to the general effect that every Committee member approved the City attorney's offer of $600,000 during the pretrial conference. (We do not know the exact wording of the interrogatory answers that contain this admission; the answers themselves are not included in the record on appeal.) However, there is no evidence that the Committee members expressly stated that no further approval of the settlement was necessary, or that they would not change their votes when the matter came before the full City Council. Thus, we reject the plaintiff's argument that the Committee members

made binding judicial admissions that precluded them from voting to reject the settlement when the matter came before the City Council.

¶ 35   Finally, even if the record disclosed affirmative, clear, and unequivocal statements by the Committee members that they would vote to approve the settlement agreement at any future City Council meeting where the issue was raised, we would hesitate to hold that the trial court could force the Committee members to vote in accordance with those statements.   As City Council members, the Committee members have the privilege to cast their votes in the manner they think will best serve the public interest, even if that involves a change from a previous position, and courts are ill-advised to interfere with the free exercise of this privilege.   In *Hoerrmann v. Wabash Ry. Co.*, 309 Ill. 524 (1923), our supreme court held that, absent allegations of fraud or corruption in the legislative process, courts will not second-guess or attempt to enjoin the decisions of municipal governing bodies:

> "Their judgment ***, if fairly exercised, is not subject to the control of the courts.   If fraud has intervened and the power of the trustees has been exercised with reference to private interests, without regard to the public interests, their action may be adjudged void. The motives of the trustees, however, cannot be called in question.   They are presumed to act from honest motives, and it is only where it is apparent that no regard whatever has been given to the public interest that their action will be held void.   However much the court may disagree with the wisdom of their conclusion or the correctness of their judgment as to the public interests, it will not undertake to substitute its judgment for that of the trustees." *Id*. at 531.

Here, there are no allegations of fraud or corrupt influence, and the plaintiff has not submitted any legal authority for the proposition that this (or any) court has the power to enjoin a duly elected municipal legislator to vote yea or nay on an issue raised in the legislative body.   For all

of these reasons, we decline to hold that the Committee members were required to vote consistently with their previously expressed approval of the settlement agreement. Accordingly, the answer to certified question 2.b. is "no."

¶ 36    Before proceeding to the final certified question, it is worth noting the importance of settlement conferences. Settlement conferences are an effective part of litigation, and are generally successful in resolving disputes, especially with a firm trial date looming. In this court's experience, the great majority of civil matters are resolved short of trial. In light of the time constraints on already over-burdened courts, successful settlement conferences are imperative.

¶ 37    The trial court in this matter set several hours of its time aside to engage in two pretrial settlement conferences, relying on the City's representation that the Committee members present had full authority to settle. To prevent the waste of scant judicial resources, Local Rule 11.03 of the Winnebago County circuit court requires that parties attending settlement conferences have authority to enter into binding settlement agreements. There is no record that, at either of the settlement conferences conducted in this case, the City attorney advised the court or the plaintiff that he did not possess such authority. Remarkably, the settlement agreement drafted by the City also lacked any notice whatsoever that the agreement was subject to the approval of the full City Council. Thus, both the plaintiff and the court relied upon the City's implied representation that its attorney had authority to settle. It is clearly evident from the record that the court was frustrated by the monumental waste of the court's time, as well as the time of all involved.

¶ 38    That being said, trial courts are not without tools to manage the conduct of municipal litigants that appear before them. Municipal bodies, like other litigants, may be sanctioned pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002) for conduct that demonstrates a willful disregard for the orders and deadlines set by the trial court (including trial dates) or that

unnecessarily and vexatiously multiplies the cost of litigation borne by the other party. In the circumstances presented in this case, a trial court could well find the City's conduct sanctionable. We do not decide here whether the City's conduct (or that of the two Committee members in changing their positions regarding approval of the settlement) is an appropriate reason to sanction the City: that is a determination best left to the trial court, with its ability to observe firsthand the actions of the parties and their attorneys. (The plaintiff orally requested the imposition of sanctions at the hearing on the motion to enforce, but the trial court declined to address the request at that point.) However, such a sanction is unquestionably within the power of the trial court.

¶ 39    "Question 3.   Is a settlement agreement, reached between a plaintiff and a municipal defendant during a pretrial settlement conference before the court and memorialized in a Release and Settlement Agreement drafted by a City Attorney and signed by the plaintiff before a notary, enforceable against municipality notwithstanding the City Council's subsequent vote to not approve said settlement?"

¶ 40    Answer: No.

¶ 41    In Illinois, the basic ingredients of a valid contract are an offer, an acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). The plaintiff argues that the settlement agreement in this case had all these elements of a valid contract. Specifically, after the oral agreement to settle made at the pretrial conference, the City drafted a settlement agreement and release that recited that it wished to settle and sent it to the plaintiff. This draft, the plaintiff argues, constituted an offer, which she accepted by signing and returning the agreement. The contract provided for consideration:  the plaintiff agreed to release her claims against the City in exchange for a payment of $600,000. The plaintiff notes that the draft did not

contain any language indicating that the agreement was contingent on approval by the City Council and argues that therefore such approval was not one of the terms of the agreement. The plaintiff asks that we enforce the settlement despite the City Council's later vote to reject the settlement.

¶ 42 This we cannot do. Regardless of whether the draft agreement spelled out the requirement that the agreement be approved by the City Council, section 3.1-40-40 of the Municipal Code imposes such a requirement, and that requirement does not disappear merely because the agreement failed to mention it. To the contrary, those who enter into agreements with municipalities are charged with knowledge of the statutory requirements that govern such agreements. *D.C. Consulting Engineers*, 143 Ill. App. 3d at 63.

¶ 43 The City cites several cases—*D.C. Consulting Engineers*; *McMahon v. City of Chicago*, 339 Ill. App. 3d 41 (2003); *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561 (2000); and *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill. App. 3d 638 (1987)—in support of its position that a contract with a municipal body must comply with the statutory requirements imposed upon such contracts, regardless of the apparent authority of the municipal agent who negotiated and purportedly executed the contract.[1] The

---

[1] We note the existence of case law suggesting that the statutory requirements are not wholly inescapable: for instance, even where a contract was irregularly entered into, a municipal body may be bound if its affirmative actions induced reliance by the plaintiff such that it should be estopped to deny the validity of the contract. See, *e.g.*, *Kenny Construction Co. of Illinois v. Metropolitan Sanitary District of Greater Chicago,* 52 Ill. 2d 187, 197 (1971); *Stahelin v. Board of Education, School District No. 4, Du Page County, Illinois*, 87 Ill. App. 2d 28, 39 (1967). However, as the plaintiff has not raised any argument here that such estoppel should apply, we

plaintiff attempts to distinguish these cases on the basis that they involved contracts for goods or services rather than settlement agreements, but she offers no rationale (other than the reasoning of *Arnold*, which we have found inapplicable) for treating these two types of contracts differently. To the contrary, settlement agreements are contracts and they are interpreted in the same manner as other contracts. *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 13 ("A settlement agreement is a release governed by contract law."). The cases cited by the City are applicable. Accordingly, in the absence of City Council approval of the settlement agreement, it is not enforceable as a valid contract. The answer to the final certified question is "no."

¶ 44                                    CONCLUSION

¶ 45    For the foregoing reasons, all of the certified questions are answered in the negative, and the cause is remanded for further proceedings consistent with this opinion.

¶ 46    Certified questions answered.

¶ 47    JUSTICE McLAREN, dissenting.

¶ 48    I dissent because I believe that this is an ersatz appeal from a severable claim, the enforcement of a settlement agreement. As such, we should have denied the petition for leave to appeal without prejudice to the filing of an appeal under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Considering that the trial court was willing to certify these questions, it is reasonable to conclude that it would have entered the necessary order for appeal under the rule. Although I have no quarrel with the analysis, I dissent because I do not agree that the majority's answers are to certified questions of *law*. Both the briefs and the oral argument read like a typical appeal from a declaratory judgment action but with a significant array of facts that could

do not consider this possibility.

have affected the outcome. I will not speculate as to whether equitable estoppel could have engendered a different result, but the fact that it might have application suggests that this is not a situation where "the order involves a question of law as to which there is substantial ground for difference of opinion." Ill. S. Ct. R. 308 (eff. Feb. 26, 2010).